UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTWAUN ANTHONY THOMPSON,

    Petitioner,

v.                                 Case No. 8:21-cv-1860-MSS-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

Thompson petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court conviction for felon in possession of a firearm. (Doc. 3) The Respondent asserts that the amended petition is time barred. (Doc. 11) Thompson replies that actual innocence excuses the time bar. (Doc. 15 at 9–11) After reviewing the petition, the response, and the relevant state court record (Doc. 17), the Court **DISMISSES** the petition as time barred.

**PROCEDURAL HISTORY**

A jury found Thompson guilty of felon in possession of a firearm (Doc. 11-2 at 218), and the trial court sentenced Thompson as a habitual felony offender to thirty years in prison. (Doc. 11-2 at 220–23) Thompson appealed, and the state appellate court affirmed. (Doc. 11-2 at 280) Thompson moved for post-conviction relief (Doc. 11-2 at 284–398), the post-conviction court denied relief (Doc. 11-2 at 400–49), and the state appellate court affirmed. (Doc. 11-2 at 453) Thompson's federal petition followed.

In his amended petition, Thompson asserts that trial counsel deficiently performed by not moving to dismiss the information and by not moving to suppress evidence (Ground

1

One), by not moving for a judgment of acquittal (Ground Two), and by misadvising Thompson not to testify. (Ground Three) (Doc. 3 at 3–4)

## ANALYSIS

A one-year statute of limitation applies to a federal habeas petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). The limitation period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On April 8, 2016, the state appellate court affirmed Thompson's conviction and sentence in a decision without a written opinion. (Doc. 11-2 at 280) Because the state supreme court lacked jurisdiction to review the unelaborated decision, Thompson could have sought further review only in the United States Supreme Court. *Bates v. Sec'y, Dep't Corrs.*, 964 F.3d 1326, 1329 (11th Cir. 2020) (citing *Jackson v. State*, 926 So. 2d 1262, 1265 (Fla. 2006)). Thompson did not seek further review, and the time to seek further review expired ninety days after the state appellate court's affirmance — July 7, 2016. Sup. Ct. R. 13.1(1). The limitation period began to run the next day. Fed. R. Civ. P. 6(a)(1)(A). *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002).

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation period. 28 U.S.C. § 2244(d)(2). Judicially noticed records from state court show that, on April 3, 2017, Thompson placed in the hands of prison officials for mailing a motion under Rule 3.800(a), Florida Rules of Criminal Procedure, to correct his sentence.[1] At that time, 269 days had run on the limitation period. On April 21, 2017, the post-conviction

---

[1] *See* Motion to Correct Illegal Sentence, *State v. Thompson*, No. 14-CF-14118 (Fla. 6th Jud. Cir. Apr. 5, 2017).

court denied the motion.[2] Thompson did not appeal, and the limitation period continued to toll until May 22, 2017, when the time to appeal expired. Fla. R. App. P. 9.110(b) and 9.141(b)(1). *Cramer v. Sec'y, Dep't Corrs.*, 461 F.3d 1380, 1383 (11th Cir. 2006). The limitation resumed the next day and expired ninety-six days later — August 28, 2017. Fed. R. Civ. P. 6(a)(1)(C) (extending a deadline that falls on a Sunday to the end of the next day that is not a Saturday, Sunday, or legal holiday). On February 7, 2018, Thompson placed in the hands of prison officials for mailing a motion for post-conviction relief. (Doc. 11-2 at 284–398) Because Thompson filed the motion after the limitation period expired, the motion did not toll the limitation. Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it.").

Thereafter, Thompson placed in the hands of prison officials for mailing his Section 2254 petition on August 3, 2021. (Doc. 1 at 1) This was almost four years after his limitations period expired. As such, his petition is untimely.

Thompson admits that his petition is untimely (Doc. 15 at 9–10) but asserts that his actual innocence excuses the time bar (Doc. 15 at 3–5) (state court record citations omitted):

> Several law enforcement officers testified during Petitioner's April 8 and 9, 2015, trial. There was no testimony proffered showing Petitioner was [ever] in actual or constructive possession of a firearm.
>
> For instance, Corporal Melvin Jackson testified on direct examination that although he saw Petitioner throw a red t-shirt from the motel window, he never witnessed Petitioner in possession of a firearm or throw a firearm from the motel window. Corporal Kevin Grissinger testified that he was "advised" that a red t-shirt was thrown from the motel window,

---

[2] *See* Order Denying Defendant's Motion to Correct Illegal Sentence, *Thompson*, No. 14-CF-14118 (Fla. 6th Jud. Cir. Apr. 21, 2017).

but "did not see it" being thrown from the motel window. Corporal Grissinger testified he never saw a firearm or a red t-shirt on the ground in the parking lot adjacent to the motel and, upon searching the motel room following Petitioner's arrest, he did not find any firearms. Sergeant Brian Bingham testified that even though he was able to maintain visual contact on Petitioner's location, he never saw a red t-shirt thrown from the window. Deputy Perry Warner testified that he did see a red t-shirt "fly out and hit the ground," but was never in a position to see the shirt, or a firearm, afterwards. Deputy Kevin Levi testified that when he recovered a gun from the parking lot adjacent to the motel, he accidentally "disassembles the gun" stating further: "[The] gun came apart from the latch . . . ." The gun was never re-assembled and was thereafter admitted into evidence without objection.

Finally, Catherine Hook, a forensic science specialist, testified that she received the gun from Deputy Levi; it had been disassembled and was in "separate pieces." She further testified that she processed the disassembled gun for fingerprints and "touch DNA," and neither Petitioner's fingerprints nor his DNA were present on any portion of the disassembled gun.

The defense rested its case without calling any witnesses. Petitioner did not testify. The defense moved for a "judgment of acquittal" based on the State's failure to prove a prima facie case of guilt against Petitioner. The motion was denied and Petitioner was thereafter found guilty as charged.

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass . . . [the] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific

4

evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Thompson fails to support his claim of actual innocence with new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. Because he instead re-argues the sufficiency of the evidence at trial, his actual innocence claim fails. *Bousley v. United States*, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency.").

Even so, the evidence at trial proved Thompson's guilt. An information charged Thompson with felon in possession of a firearm. (Doc. 11-2 at 2) A sheriff's deputy with the Violent Offender Warrant Unit, who was looking for Thompson, found him at the Landmark Motel in Pinellas County. (Doc. 11-2 at 24–25) Thompson refused to exit the motel room, screamed, yelled, and broke items inside the room, set towels, bedsheets, and other items on fire, and threw the items out a window. (Doc. 11-2 at 30–31, 50–51) When Thompson stuck his head out the window, another deputy asked Thompson to surrender. (Doc. 11-2 at 55) Thompson refused and retreated into the motel room. (Doc. 11-2 at 55–56)

When a deputy called Thompson's mobile telephone, Thompson answered, refused to surrender, and threatened to kill himself with a firearm (Doc. 11-2 at 58):

> [Prosecutor:]   Did he make any statements involving a gun while you were speaking with him?
>
> [Deputy:]   Yes, ma'am. Specifically, as I was talking to him on the phone, he told me that he had made peace with his family, and he was ready to do it. He stated I have my gun with me, I'm ready to go. You-all have to come in here and get me, and I'm ready to get you.

5

Another deputy saw Thompson straddle the window and throw a red shirt out the window, over a wall, and into a parking lot next to the motel (Doc. 11-2 at 71):

| | |
|---|---|
| [Prosecutor:] | Did you see anybody come out of the window? |
| [Deputy:] | Partially, I saw the Defendant kind of straddle the window where he was facing south just hanging there. |
| [Prosecutor:] | So south would be what direction? |
| [Deputy:] | Facing that way. |
| [Prosecutor:] | So the opposite direction where you're standing, basically looking that way? |
| [Deputy:] | Yes. |
| [Prosecutor:] | Where else did he look when he was hanging out the window? |
| [Deputy:] | He looked across into the parking lot as well. |
| [Prosecutor:] | Across this parking lot that's on the other side of the wall? |
| [Deputy:] | Yes. |
| [Prosecutor:] | All right. Did you see him throw something out? |
| [Deputy:] | Yes, I observed him throw a red t-shirt from the window across the wall into the parking lot. |
| [Prosecutor:] | Did he appear that he was just merely dropping it down, or did he appear like he [was] actively trying to throw it? |
| [Deputy:] | He was actually trying to throw it. It didn't come directly downward, like he was tossing it, it was out and over the wall, which you can see a couple of feet away. It |

6

> takes some good exertion to get it out and across the wall.

Police arrested Thompson and determined that no other person occupied the motel room. (Doc. 11-2 at 30, 103–04) After Thompson's arrest and about three hours after Thompson threw the red shirt into the parking lot (Doc. 11-2 at 87–88), a deputy discovered a firearm inside the red shirt (Doc. 11-2 at 74–75):

> [Prosecutor:] Did you go back — after he was taken into custody, did you go back and look at the red t-shirt?
>
> [Deputy:] Yes, I did.
>
> [Prosecutor:] What did you see in the red t-shirt?
>
> [Deputy:] Inside the red t-shirt, there was a firearm. It was a semiautomatic handgun.
>
> [Prosecutor:] Was it all in one piece when you saw it?
>
> [Deputy:] Yes.
>
> [Prosecutor:] Did you have to — when you saw it for the first time, was it wrapped up or was it open?
>
> [Deputy:] It was partially open. It was still inside the red t-shirt; it was partially opened where I could see that something was there. I opened it further to confirm that there was actually a firearm inside.
>
> [Prosecutor:] So you actually opened it up and saw that it was a firearm?
>
> [Deputy:] Yes.

The prosecutor introduced into evidence photographs of the firearm and the red shirt. (Doc. 11-2 at 75–77, 211–16) A deputy picked up the firearm, determined that the firearm was loaded with ammunition and appeared operable, removed the ammunition from the

7

firearm, and disassembled the firearm for safety by pushing a latch. (Doc. 11-2 at 107–09) A forensic analyst, who processed the firearm, was unable to find any fingerprints or other forensic evidence on the firearm. (Doc. 11-2 at 125–26) The parties stipulated that Thompson was a convicted felon. (Doc. 11-2 at 133)

Because Thompson told a deputy that he was armed with a firearm, a deputy observed Thompson throw the red shirt out of the window of the motel room, and another deputy discovered a firearm wrapped inside the red shirt, the evidence convincingly demonstrated that Thompson actually possessed a firearm. *See* Fla. Std. Jury Instr. (Crim.) 10.15 ("To prove (defendant) 'possessed' [a firearm], the State must prove beyond a reasonable doubt that [he] a) knew of the existence of the [firearm] and b) intentionally exercised control over it.").

Because Thompson fails to demonstrate that no reasonable juror would have convicted him in light of new reliable evidence, actual innocence does not excuse the time bar. Accordingly, Thompson's amended petition (Doc. 3) is **DISMISSED** as time barred. The Clerk is **DIRECTED** to enter a judgment against Thompson and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Thompson neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on April 9, 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

8